## In re McKEE.

(District Court, N. D. Texas, at Dallas. July 8, 1914.)

### No. 1041.

BANKRUPTCY (§ 48*)—VOLUNTARY PROCEEDINGS—DISMISSAL—RIGHT OF BANK-
RUPT TO DISMISS.

A voluntary bankruptcy proceeding may not be dismissed on motion of
the bankrupt after adjudication by consent of all parties.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 47; Dec.
Dig. § 48.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Robert
Lee McKee. On motion of the bankrupt to dismiss the proceedings.
Denied

Ross M Scott, of Dallas, Tex., for bankrupt.

Greenwood, Walker & Williamson, of Dallas, Tex., for Blair-
Hughes Co.

MEEK, District Judge. The bankrupt, Robert Lee McKee, moved
the court to withdraw his voluntary petition in bankruptcy on which
he had been adjudicated a bankrupt, and to dismiss this proceeding
upon payment of all costs. Thereupon the court entered an order re-
ferring the motion to Eugene Marshall, Esq., referee in bankruptcy,
for hearing and report. Hereinbelow is incorporated in full the re-
port of the referee, together with an opinion prepared by him on the
motion to dismiss:

"In pursuance of the order referring to me the motion of the bankrupt in
the above cause, for the dismissal of these proceedings in bankruptcy, I beg
leave to make the following report:

"On the 17th day of June, 1914, the bankrupt filed in the office of the
United States district clerk his motion for the withdrawal of his petition and
dismissal of these proceedings upon the payment of all costs. The motion
set up no other grounds for the dismissal except that it was the desire of
the bankrupt that the case be dismissed and that all the creditors consent
to the same and agree that the dismissal will be in their interest and the in-
terest of all parties to the proceeding and waive statutory notice of the mo-
tion. To the motion for dismissal are attached the respective consents and
waivers of the creditors. Upon the receipt of the order of reference, I set
the motion down to be heard before me, at my office, in the city of Dallas, on
June 19, 1914, at 11 o'clock a. m., and, notwithstanding the waivers, gave no-
tice thereof to the creditors and parties in interest as their names appear of
record in this cause.

"On the 19th day of June, 1914, no other creditors appeared except Blair-
Hughes Company, who appeared by its attorneys, Greenwood, Walker &
Williamson. The bankrupt appeared in person and by his counsel, Ross M.
Scott. The trustee appeared in person. Those present having announced
ready, I proceeded with the hearing and took the deposition of Vernon Hall
and George F. Rockhold, the trustee, who were offered as witnesses in support
of the motion of the bankrupt. These depositions are herewith transmitted
for the information of the judge.

"At the conclusion of the examination of the witnesses, the matters in con-
troversy were submitted to me in argument upon all the law and evidence,
which consists of the record in this case and the said depositions.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

"The uncontradicted and admitted facts in relation to the said motion are as follows:

### "Statement of Facts.

"A voluntary petition in bankruptcy was filed, as aforesaid, by Robert Lee McKee, in the United States district clerk's office, on the 16th day of May, 1914, and on the same day the petitioner was adjudged bankrupt by the judge, and the case referred to me, as one of the referees in bankruptcy of this court, before whom it is still pending. In connection with this petition, the bankrupt filed proper schedules of his assets and liabilities as prescribed by law, and deposited with the clerk the necessary filing fees. In his schedules he listed about 14 creditors, some of whom are stated to be in the city of Dallas, and the rest in Ellis county, near Ferris. As appears from his schedules, his indebtedness aggregates the sum of $2,089, and his assets consisting of a small stock of groceries at Patrick Schoolhouse, in Dallas county, Tex., are estimated to be of the value of $1,300, some accounts of the face value of $607.95, and his homestead and other exempt property of the value of $1,270. His largest creditor appears to be Blair-Hughes Company, of Dallas, who according to the deposition of Vernon Hall, its credit manager, claim an indebtedness of $1,294; but it has never proved its claim or sought to have it allowed.

"George F. Rockhold, of Dallas, was appointed receiver, on the 22d day of May, 1914, and having given the required bond took possession of the stock of merchandise, which he inventoried at its cost value. The stock according to his inventory is of the value of $714, the fixtures $200, and the accounts of the face value of $626.55; but the actual value of these accounts is doubtful. In performing his work as receiver he incurred an expense of $25.80, which has been duly reported and which was approved at the first creditors' meeting, but is unpaid. The first creditors' meeting was held on the 8th day of June, 1914, pursuant to ten days' notice thereof to all the creditors listed by the bankrupt. At this meeting the bankrupt appeared, and also a witness by the name of Chapman, who had been summoned by Blair-Hughes Company, to testify respecting the affairs and conduct of the bankrupt. There being no creditors present who had proven their claims, the court thereupon appointed George F. Rockhold, as trustee, who qualified as such on the 13th day of June, 1914. The bankrupt was examined and the meeting was adjourned until Monday, the 15th of May, upon motion of the bankrupt to enable him to make an offer of composition. Pursuant to the adjournment the parties again reassembled and stated that they were unprepared then to offer a composition, but would do so on Wednesday, the 17th instant, and the meeting was accordingly adjourned over until the 17th instant, on which day the parties again appeared and sought another continuance for the same purposes of securing a composition, and the creditors' meeting was accordingly passed over to the 19th day of June. In the meanwhile the motion to dismiss was submitted to the judge, who, as above stated, referred said motion to me for hearing. George F. Rockhold, who had been appointed trustee, qualified as such by giving bond in the sum of $1,000 on the 13th day of June, 1914.

"It appears from the motion for a dismissal that all the creditors join in said motion and agree that it is for the best interest of all parties that said proceeding shall be dismissed in accordance with the prayer of the motion and that the purpose of said motion was to effect some sort of settlement with the creditors, the precise terms of which were not disclosed at the meeting, except that the Dallas creditors were to receive 50 per cent. of their claims, and that Blair-Hughes Company was to receive a little less than that amount, but were to dismiss certain proceedings instituted by them against the bankrupt prior to the filing of the petition in bankruptcy, on condition that the bankrupt pay all costs of that proceeding. This was a suit in sequestration, whereby the Blair-Hughes Company claimed that by reason of false statements which had been made by the bankrupt they had extended credit to the bankrupt and he purchased a large portion of his stock on credit from them, which was delivered to the bankrupt on the faith of said statement. That by reason of the fraud practiced by the bankrupt no title passed to him

for said goods, and said sequestration proceeding was instituted to reserve the title and possession of said property. At the time of the institution of the proceedings in bankruptcy the sheriff was holding said property under said writ of sequestration, and when the receiver was appointed he (the sheriff) voluntarily turned the property over to the receiver, who knew nothing at the time of the character of the possession of the sheriff or writ he was holding under. The order appointing the receiver ·authorized the receiver to take possession of only such property as was voluntarily turned over to him, and no protest was made at the time against the action of the sheriff. When the matter was brought to the attention of the court, the Blair-Hughes Company stated that no point would be made by them as to the rightfulness of the custody of the receiver of the goods sequestered by them in said suit. It is proper to say that I stated that, if the point was made that the receiver's custody was not lawful, I would direct the trustee to surrender to the sheriff all or such part of the property as would appear to have been seized by the latter, and direct the trustee to apply to the court having jurisdiction of the writ for a release of the same to him as trustee. From the little testimony that was introduced on the subject of the bankrupt's fraud, I did not think it could be sustained, since the fraud charged seemed to have been committed more than one year before the suit was instituted, and it was practically impossible that Blair-Hughes Company could have relied on it in extending credit and if it did then laches had waived the fraud. At all events the Blair-Hughes Company waived in these proceedings any claim arising under its writ of sequestration. ·The purpose of the motion to dismiss is to enable the bankrupt to settle all these controversies on terms agreeable to his creditors which are said to be the payment of 50 cents on the dollar to the Dallas creditors, the dismissal of the proceedings in sequestration, and the payment of all costs and $50 attorneys' fee, by the bankrupt. Blair-Hughes Company would thus receive $500 net. The costs of this proceeding in bankruptcy will not exceed $50, which includes the aid of the stenographer in taking the. testimony. An itemized statement is hereto attached and made a part of this report.

"The motion for withdrawal and dismissal of the petition was fully argued before me, upon the law and the evidence, and I announced at the conclusion thereof that in my opinion there was no authority in the bankruptcy law authorizing a dismissal of proceedings by a petitioner, with the consent or after notice to the creditors after his adjudication and the appointment and qualification of his trustee.

"I have briefly elaborated these views in an opinion which I transmit herewith under another cover.

"If the judge does not concur in the view therein expressed, then it will be discretionary with him to dismiss the proceedings and the wishes of the creditors would be largely controlling upon him in the exercise of that discretion. But as yet no creditor has proven or offered to prove any claim against his estate.

"I therefore recommend that the motion for dismissal be refused upon the ground that there is no authority conferred by the bankruptcy act for the petitioner to dismiss his petition with the consent of creditors, after adjudication and the appointment of his trustee."

## "Opinion.

"In this case an individual voluntary petition was filed in this court with schedules annexed. The petition and schedules were ·in compliance with the provisions of the act, the petitioner was accordingly adjudged bankrupt by the judge, and the usual general order of reference was made to the referee. The first meeting of the creditors was held pursuant to 10 days' notice to creditors, and a trustee was appointed thereat and has qualified, and is now in possession of a stock of merchandise belonging to the bankrupt's estate. After these proceedings had been taken in the court, the petitioner, joined in by his creditors whose names are set forth in the schedules, filed a motion to withdraw and dismiss his petition in this court, which has been referred by the judge ·to the referee for report, and all proceedings stayed until the final

hearing. The question submitted is whether, under the facts above stated, the bankruptcy court has been conferred by the act with authority to permit a petitioner to withdraw or dismiss his petition, when the ground for such dismissal is the consent of creditors and the agreement that such dismissal will be in the interest of all parties, and to enable them to make a settlement outside of the court.

"Upon the question I submit the following suggestions:

"A voluntary petition in bankruptcy is in effect a suit by a debtor against his creditors for a discharge from his debts, accompanied by a surrender of all his property not exempt to be distributed upon a scheme of equality prescribed by the bankruptcy act. Until there is an adjudication, the proceeding is, as to the discharge at least, a suit in personam; after adjudication it is a proceeding in rem as well as in personam. It may be conceded as true that proceedings in personam are generally in control of the parties and are subject to withdrawal or dismissal by their consent at any time before final decree. In bankruptcy this general right to dismiss by consent or for want of prosecution, which in its last analysis is the same thing as consent of the parties, is subject to the restriction that, when the petitioner moves to dismiss, his creditors must receive 10 days' notice of the proposed dismissal. But after adjudication the rights and relations of parties change substantially. An adjudication is to all intents and purposes a final decree on the petition. It confers jurisdiction completely and exclusively both in rem and in personam. All creditors are parties, but they are not the only parties. All persons in any way interested in the res are also parties. The adjudication is, like other judicial determinations, subject to the rule that matters once having been litigated and determined by the judgment of a court of competent jurisdiction cannot again be made the subject of legal contention as between the parties and privies. The rights of petitioners are then concluded. If the adjudication has been lawfully made and assented to, the court can only then entertain a motion for a rehearing or a petition to set aside or vacate the adjudication, and it is well settled that, the condition of parties having materially changed, they will not be heard to vacate the adjudication and demur to the petition. Collier on Bankruptcy (9th Ed.) p. 435, and cases cited.

"Until the adjudication is vacated by a direct proceeding it is as binding and conclusive upon the bankrupt and the other parties as a judgment inter partes on due hearing in a court of competent jurisdiction. In this respect all persons as above stated who are interested in the res are parties including lienors and the trustee. [Chapman v. Brewer] 114 U. S. 169 [5 Sup., Ct. 799, 29 L. Ed. 83]; Carter v. Hobbs (D. C.) 92 Fed. 594; [In re Henry Ulfelder Clothing Co. (D. C.)] 98 Fed. 409; Michaels v. Post, 21 Wall. 398 [22 L. Ed. 520].

"The effect of an adjudication is to render voidable many solemn contracts of the petitioner, including liens obtained by judicial process and to operate as a stay of judicial proceedings, in which other parties than those listed as creditors of the debtor have a vital interest. It follows that when there has been an adjudication regularly obtained the function of the petition has practically ceased. In other words, the adjudication is the final decree on the petition. If the petitioner desires to obtain a discharge, he must petition again, and the court is obliged to give him another and independent hearing. While predicated upon the adjudication, the discharge is in effect a separate and independent proceeding requiring separate and independent notice and hearing. If the petitioner and his creditors desire to dispose of the bankruptcy proceeding and escape the small cost of administration, they have the right either to move to vacate the adjudication or to agree to a composition under the eye of the court as provided in section 12 of the act (Act July 1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426]). Pretermitting all questions of jurisdiction of the court over the petition or petitioner, it is difficult to see upon what ground a motion in a voluntary petition to vacate the adjudication, once made, could be sustained, since under the provisions of the present act any person who owes debts and files his petition and schedules and who has resided the requisite length of time in the jurisdiction of the court can invoke the benefits of the act. It may happen that in the proceedings in partnership

cases because of fraud ör of nonjoinder of partners, or because the nonjoining partners desire to administer the assets, the court will set aside an adjudication and dismiss the proceedings. But these rest upon specific statutory provisions. The pendency of a former petition in a court of competent jurisdiction, the want of jurisdictional residence, the failure of a petitioner to file proper schedules, may also be grounds for vacating an individual adjudication. But these are jurisdictional in their nature. From the nature of an individual voluntary petition the grounds for setting aside an adjudication must be few. The interval between the filing of the petition, its reference, and the adjudication thereoh is in practice very short. These proceedings are practically simultaneous in ordinary cases. This may give rise, as counsel urges, to the question: When has a creditor the right to move to vacate the adjudication, since he has in practice no notice thereof in a voluntary case? The answer to this would be certainly not later than the first creditors' meeting and before the appointment of a trustee. Every one at that time has had notice both of the adjudication and the filing of the petition and the right of the creditors to move to vacate is certainly concluded then, if not sooner. It is clear that, up to the time the bankrupt is adjudicated either in a voluntary or involuntary case, the parties may move to dismiss the case by consent, but not afterwards, except upon the confirmation of a composition. A dismissal in such cases is discretionary, and the consent of creditors is largely controlling on the court in the exercise of this discretion. The statutory provisions in the present bankruptcy act providing for dismissal of bankruptcy proceedings seems to me to be in thorough accord with the view that the dismissal by consent must be confined to the petition and before adjudication.

"Section 1 defines a petition as follows: ' "Petition" shall mean a paper filed in a court of bankruptcy with a clerk by debtor praying for the benefits of this act, or by creditors alleging the commission of an act of bankruptcy by a debtor therein named.'

"When this paper or 'petition' is filed in a voluntary case, it is the duty of the judge to hear it forthwith and either adjudicate or dismiss the petition. In case of his absence from the district or division of the district, it is referred to the referee, who must likewise either adjudicate or dismiss the 'petition.'

"Section 18, subd. G, provides: 'Upon the filing of a voluntary petition the judge shall hear the petition and make adjudication or dismiss the petition.'

"This is apparently a general power conferred upon the court to dismiss petitions with or without notice, but there is a restriction imposed by section 59G upon the proposed dismissal by consent of parties or for want of prosecution. Before the amendment of 1910, section 59G read as follows: 'A voluntary or involuntary petition shall not be dismissed by petitioner or petitioners or for want of prosecution or by consent of parties until after notice to the creditors.'

"It is thus seen that a dismissal by the court upon motion of the petitioner, either for want of prosecution or by consent of parties, could not be had without notice to the creditors. The court still has the general right to dismiss for any other reason appearing upon the face of the petition in the record. Nothing I apprehend can be drawn from this language as indicating legislative intention to give an additional right to dismiss after adjudication, since upon adjudication the petition, as we have seen, has served its purpose. The provision added by the Act of June 25, 1910, c. 412, § 10, 36 Stat. 841 (U. S. Comp. St. Supp. 1911, p. 1506), as to notice, now makes it imperative on the judge in such cases 'to delay the hearing thereon for a reasonable time to allow all creditors and parties in interest opportunity to be heard,' which indicates quite clearly that a dismissal by consent could only take place before the final hearing on the petition.

"Another method of procuring a dismissal is by composition as provided by section 12, upon the confirmation of which 'the case,' not the 'petition,' is dismissed, which confirmation and dismissal under the terms of section 14C operates as a discharge and under the provisions of section 70F operates eo instanti to revest the title of the bankrupt's property in the bankrupt. This is the only instance in the present act authorizing the revesting of the

title in the bankrupt which has been vested in the trustee by adjudication. Can it be said that the court at the request of petitioner and creditors can by its order in absence of statutory authority revest the title in a bankrupt after adjudication? It seems to me that Congress, having provided a mode by which the title and possession of property may be returned to the bankrupt, denies this court the right of exercising that authority in any other or different method. A potent reason for thus restricting this power is to render secure titles to property which are constantly passing in bankruptcy proceedings. If the court has authority upon consent of parties to control the disposition of the trustee's title, that title would be subject to doubt in the interpretation of the decrees of court or the intention of the parties. In the present bankruptcy law there are but two methods of divesting the title once vested by adjudication in the trustee: First, by confirmation of a composition; and, second, by the trustee's conveyance. There is indeed some judicial doctrine grown up in reference to burdensome property, but that proceeding is in the interest of lien creditors, and in its analysis is a mere transfer by the trustee of his title or such title or interest as he has in satisfaction of the debt or lien against the property. Some light is thrown on this question by the cognate provision of the Act of March 2, 1867, c. 176, 14 Stat. 517, of which the present act is practically a reproduction.

"It was uniformly held under the act of 1867, before that act was amended in 1874 [Act June 22, 1874, c. 390, 18 Stat. 178], that an application for dismissal came too late after adjudication.

"Judge Treat, in response to a motion to dismiss after adjudication, said: 'This motion comes too late. All creditors have the right to present their claims and have the estate of the debtor wound up under the proceedings in bankruptcy. If the parties desire to make the settlement, they may proceed under section 43 of the act, and have the estate wound up under trustees.' In re Sherburne, Fed. Cas. No. 12,758.

"This was the well-settled practice under the act of 1867 as originally passed until the amendment of June 22, 1874. Section 14 of that amendment provides: 'All proceedings in bankruptcy may be discontinued on reasonable notice and hearing, with the approval of the court and upon the assent in writing of such debtor and not less than one-half of the creditors in number and amount, or, in case all the creditors and such debtors assent thereto such discontinuance shall be ordered and entered; and all parties shall be remitted in either case the same rights and duties existing at the date of the filing of the petition in bankruptcy, except so far as such estate shall have been already administered and disposed of.' In re McKeon, Fed. Cas. No. 8,858, Judge Blatchford.

"It will be observed that the amendment carefully restored the title vested in the assignee to the same condition as it was at the time of the filing of the petition, except so far as such estate shall have been administered and disposed of. It may be worthy of remark that this amendment, together with compositions authorized by it and the loose practice arising thereunder, opened wide the door to all manner of frauds and collusive arrangements and settlements between the debtor and his creditors, which was the chief complaint against the Bankruptcy Act of 1867. In fact, it was said that this amendment changed the law entirely. These fraudulent compositions and settlements and exorbitant charges of officers led as a matter of history to the repeal of the act of 1867 as being the simplest way out of the difficulties in amending the law with the legislative promise that a new law would be framed at once to take its place. But the memory of the frauds and scandals arising under this act was such that the new law was not passed until the intolerable conditions grown up under state insolvent laws forced Congress to pass the present act, in which most of the objectionable provisions of the former act were eliminated. Among these was manifestly the right to make settlements after adjudication, except under the eye of the court with proper safeguards, notice, and investigation, and only then, when the court was satisfied that such settlements were in the interest of all creditors and that none of the provisions of the law either in letter or in spirit were violated. I have not been cited to a single decision construing the provisions above

quoted of the present act as authorizing a dismissal by consent of parties of a petition after adjudication or the appointment of a trustee. The case relied upon by counsel (In re Salabery [D. C.] 5 Am. Bankr. Rep. 847, 107 Fed. 95) did not pass upon this question and it is significant that in the opinion of the court the dismissal is denied, and the trustee was directed to administer upon the estate. The simple question that the court passed upon was that in case of a dismissal the parties seeking the same would have to pay the costs.

"I therefore conclude that after adjudication in a voluntary case the right of a petitioner to dismiss a petition by consent of creditors ceases. After adjudication, the remedy is by vacating the adjudication the same as vacating any other final judgment, and that after the appointment of a trustee it is too late for any party to move to vacate the adjudication, except upon questions which go to the jurisdiction of the court. If the bankrupt desires a settlement with his creditors, he must seek it under the provisions of section 12, providing for composition. . Otherwise it will be the duty of the trustee to proceed with the administration by sale and distribution of the assets in accordance with the provisions of the act."

I have given consideration to the report of the referee and the conclusions reached by him, and also to the learned opinion submitted in support thereof. I fully concur with the referee in his conclusion that a bankruptcy proceeding may not be dismissed by consent of parties on motion, after adjudication, and so hold.

Accordingly, an order will be entered denying the motion of the bankrupt to dismiss.